IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| JESSIE S. PHILLIPS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 3:20-CV-05015-MDH ) |
| ANDY PIKE, et al., | ) ) |
| Defendant. | ) |

## ORDER

Before the Court is Defendants Jennings', Childers', and Pooler's Motion for Summary Judgment. (Doc. 71). For the reasons set forth herein, the Motion is **GRANTED**.

## BACKGROUND

This is a claim in which pro se Plaintiff seeks recovery solely under 42 U.S.C. § 1983. (Doc. 17, ¶¶ 1, 2). Additionally, only individual capacity claims are asserted. *Id.* at ¶ 9. The named Defendants are six members of the Newton County Sheriff's Office. *Id.* at ¶ 8. The instant Motion has been filed on behalf of three of them: Sheriff Chris Jennings, Deputy Joe Childers, and Corporal Brandy Pooler ("Moving Defendants"). With regard to these Defendants, the claims against them arise out of events beginning on August 4, 2017, at the residence Plaintiff owned with her then-husband, Jeremey Phillips at 11088 Molly Drive in Newton County, Missouri (the "residence"). *Id.* at ¶¶ 33, 42. On that day Deputy Childers responded to the residence on a civil standby and with an Ex Parte Order of Protection which barred Plaintiff from being present. Plaintiff was at the residence but retreated inside upon seeing Childers arrive. She then barricaded herself inside a bathroom closet. After repeated attempts to have her voluntarily leave were unsuccessful, the law enforcement officers present at the scene forced open the locked door leading

1

into the bathroom and placed Plaintiff under arrest and handcuffs were applied to her wrists. She was transported by Childers to the Newton County Jail and processed inside by Defendant Pooler. Deputy Childers prepared and submitted a Statement of Probable Cause and a Newton County Judge issued an arrest warrant. Several days later Plaintiff was released from custody.

The pro se Amended Complaint appears to assert the following theories against each of the Moving Defendants: (1) Fourth Amendment search and seizure; (2) Fourteenth Amendment Due Process Clause claim concerning the wrongful seizure of personal property, a handgun, from Plaintiff's car following her arrest; (3) Fourteenth Amendment equal protection claim; (4) setting of excessive bond; (5) the conditions of her confinement while detained at the Newton County Jail, including being searched before admittance to the Jail's population; (6) not being released within 24 hours of her arrest; (7) a "failure-to-protect" due process claim; (8) 42 U.S.C. § 1983 conspiracy claim; (9) supervisory liability claim against Sheriff Jennings; and (10) unlawful use of excessive force against Deputy Childers.

**STANDARD**

Summary judgment is proper where, viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1359 (8th Cir. 1993). "Where there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate." *Quinn v. St. Louis County*, 653 F.3d 745, 750 (8th Cir. 2011). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets the initial step, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986). To satisfy this burden, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

A question of material fact is not required to be resolved conclusively in favor of the party asserting its existence. Rather, all that is required is sufficient evidence supporting the factual dispute that would require a jury to resolve the differing versions of truth at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248-249. Further, determinations of credibility and the weight to give evidence are the functions of the jury, not the judge. *Wierman v. Casey's General Stores, et al.,* 638 F.3d 984, 993 (8th Cir. 2011).

## DISCUSSION

The Court will analyze Plaintiff's claims as to each individual Moving Defendant. However, many of Plaintiff's claims are barred by the doctrine of qualified immunity. Plaintiff also generally asserts an equal protection claim against all Moving Defendants. Plaintiff finally complains that Moving Defendants were involved in a conspiracy to arrest and confine Plaintiff.

### Qualified Immunity

Government officials are entitled to qualified immunity in a § 1983 claim unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable official would have known. *Peterson v. Kopp*, 754 F.3d 594, 598 (8th Cir. 2014). Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines. *Avalos v. City of Glenwood*, 382 F.3d 792, 798 (8th Cir. 2004). Qualified immunity "is an immunity from suit rather than a mere defense to liability, which is effectively lost if a case is erroneously permitted to go to trial." *Id.* Application of qualified immunity to each defendant should be analyzed separately. *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2016) ("[t]he

3

doctrine of qualified immunity requires an *individualized* analysis of *each* officer's alleged conduct'") quoting *Walton v. Dawson*, 752 F.3d 1109, 1125 (8th Cir. 2014) (emphasis in original).

Qualified immunity involves a two-step analysis: "(1) whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right, and (2) whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Morris v. Zefferi*, 601 F. 3d 805, 809 (8th Cir. 2010) (internal quotation marks omitted). A court considering the qualified immunity defense has discretion to consider the two-step qualified immunity analysis in the order it deems fit. *Pearson v. Callahan*, 555 U.S. 223, 242 (2009). However, if the first prong of the analysis is answered in the negative, a court "need not proceed further with the qualified immunity analysis." *Brockinton v. City of Sherwood*, 503 F.3d 667, 672 (8th Cir. 2007). If the second prong of the analysis is reached, it is important to bear in mind the law is "clearly established if it gives the defendant official 'fair warning' that his conduct violated an individual's rights when the official acted." *McCoy v. City of Monticello*, 342 F.3d 842, 846 (8th Cir. 2003).

Because Plaintiff cannot show any violation of her constitutional rights, as discussed below, the first prong of the qualified immunity test cannot be met for any Moving Defendant.

<u>Equal Protection Claim</u>

In addition, Plaintiff asserts an equal protection claim against all Defendants. However, such a claim is not viable. To state a viable equal protection claim, a plaintiff must show she was similarly situated to others and was singled out for dissimilar treatment. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "Thus, the first step in an equal protection case is determining whether the plaintiff has demonstrated that she was treated differently than others who were similarly situated to her." *Klinger v. Department of Corrections*, 31 F.3d 727, 731 (8th Cir.), *cert. denied*, 513 U.S. 1185 (1995). *See also Johnson v. City of Minneapolis*, 152 F.3d. 859, 862

(8th Cir.) (to state equal protection claim, plaintiff must establish he was treated differently from others similarly situated), *cert. denied*, 525 U.S. 1142 (1999). Here, the uncontroverted material facts demonstrate Plaintiff cannot point to anyone in a similar situation. Plaintiff appears to be arguing that Defendants treated her specifically differently than they would another person based on personal reasons. This does not present an equal protection claim.

## Conspiracy Claim

Plaintiff also complains defendants were involved in a conspiracy. This theory fails for several independent reasons. First, "[t]o create a genuine issue of conspiracy, [plaintiff must] point to at least some facts which would suggest that [defendants] 'reached an understanding' to violate [his] rights." *Nelson v. City of McGehee*, 876 F.2d 56, 59 (1989). "To advance past the summary judgment stage, [plaintiff] must allege with particularity and specifically demonstrate material facts that the defendants reached an agreement." *Reasonover v. St. Louis County*, 447 F.3d 569, 582 (8th Cir. 2006). There are no facts in the record that any of the Moving Defendants had a sufficient "meeting of the minds" to violate a constitutional right of Plaintiff.

Second, to present a viable § 1983 conspiracy claim, Plaintiff must demonstrate the violation of a constitutional right. *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999). Here, as discussed below, the record establishes plaintiff did not suffer a constitutional deprivation. Accordingly, Plaintiff's conspiracy claim fails.

**A. Deputy Childers**

Deputy Childers' involvement in this case begins with his interaction with Plaintiff at her residence on the day of her seizure and arrest, August 4, 2017. Childers arrived at the residence that afternoon in a law enforcement uniform and drove up in a marked patrol car. He was there to perform a civil standby and had an Ex Parte Order of Protection with him. That Order prohibited

Plaintiff's presence at the residence. As soon as Plaintiff saw Deputy Childers, she ran from the area of the garage and retreated inside the residence, ultimately barricading herself behind a closet door in a locked bathroom. Prior to entering the residence, Childers was provided with information that a gun in the residence could not be located. Further, after he saw her run inside, Childers asked for and received permission from Plaintiff's then-husband to enter the residence. After Childers was inside, Plaintiff was repeatedly warned that if she did not voluntarily come out, she would be arrested. She failed to comply. As a result, after the bathroom door was forced open, Plaintiff was seized and placed in handcuffs. Deputy Childers is entitled to qualified immunity on this initial entry and seizure claim because his conduct was objectively reasonable and did not violate clearly established law. The initial entry was clearly permissible, because given the Ex Parte Order the only individual with the right to be present at the residence was Jeremy Phillips, and he voluntarily consented to the entry. *United States v. Brandwein*, 796 F.3d 980, 984-86 (8th Cir. 2015) (consent to enter residence by suspect's wife sufficient).

Further, the arrest and seizure of Plaintiff after she repeatedly failed to comply with the orders to voluntarily come was also proper and not in violation of clearly established precedent. "A warrantless arrest complies with the Fourth Amendment when the available facts and circumstances are sufficient to warrant a person of reasonable caution to believe that an offense was being or had been committed by the person to be arrested." *United States v. Houston*, 548 F.3d 1151, 1154 (8th Cir. 2008). Here, Childers observed Plaintiff in the residence when the Ex Parte Order specifically barred her presence. Further, she failed to comply with repeated commands to exit the residence. Under these circumstances, there was at least arguable probable cause to believe Plaintiff had violated the Ex Parte Order, resisted arrest, and interfered with the legal process by refusing to accept the Ex Parte Order. *Chevallier v. Hand*, 722 F.3d 1101, 1104 (8th Cir. 2013)

6

Case 3:20-cv-05015-MDH   Document 91   Filed 09/07/21   Page 6 of 14

("Because the qualified immunity privilege extends to a police officer who is wrong, so long as he is reasonable, the governing standard for a Fourth Amendment unlawful arrest claim is not probable cause in fact but arguable probable cause ... that is, whether the officer should have known that the arrest violated plaintiff's clearly established right") (internal quotation marks omitted).

Plaintiff claims Childers unlawfully used excessive force when arresting her. "The question whether an officer has used excessive force requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Kisela v. Hughes*, U.S. 138 S. Ct. 1148, 1152, 200 L.Ed.2d 449 (2018). "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." I*d*. (quoting *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). In other words, courts do not sit in second-guessing judgment of moment-to-moment police conduct but review the conduct for objective reasonableness in view of the facts as a whole, "without regard to [the officers'] underlying intent or motivation." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.") (internal citations omitted).

Plaintiff admits that she began to comply with the instructions given to her by law enforcement once she was found in her residence. She acknowledges that she was not thrown to the ground but got on the ground under her own power. The handcuffs were not excessively tight.

7

Plaintiff admits that "once [Childers] put handcuffs on me and I stood up…the cuffs were loose, and I put my arms up against the back up this way instead of down because I thought they were going to fall off." (Doc. 87, p. 5). Furthermore, Plaintiff testified that her transport to the Newtown County Jail was without incident and that Childers treated her in a professional manner. *Id*. There is no evidence that Childers used any unreasonable force at all, let alone force that could rise to a constitutional deprivation.

After placing her under arrest, the only other thing Childers did on scene which Plaintiff is critical of is to seize a handgun from her vehicle. To the extent this is a theory of recovery, it may not be maintained under § 1983. The Due Process Clause of the 14th Amendment provides that no state shall deprive any person of life, liberty or property without due process of law. "Procedural due process claims require a two-step analysis. Initially, a plaintiff must demonstrate that the state deprived him of some life, liberty, or property interest. If successful, the plaintiff must then establish that the state deprived him of that interest without sufficient process." *Krentz v. Robertson*, 228 F.3d 897, 902 (8th Cir. 2000) (internal quotation marks omitted). "When a state employee's unauthorized, random acts deprive a person of property, the state employee's acts do not violate the procedural requirements of the due process clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Clark v. Kansas City, Mo., School Dist.*, 375 F.3d 698, 702 (8th Cir. 2004). Missouri provides an adequate post-deprivation remedy in the form of replevin. *Id.* at 703. Moreover, Plaintiff admits that after meeting with Sheriff Jennings, this property was returned to her before this suit was even filed.

Plaintiff also makes allegations that question the validity of the probable cause statement written by Deputy Childers which led to issuance of the arrest warrant. Potential § 1983 liability in this context was addressed in *Mueller v. Tinkham*, 162 F.3d 999 (8th Cir. 1998). The issue in

that case was whether the officers had probable cause to seek issuance of a warrant for plaintiff's arrest.

> Clearly established Fourth Amendment law requires a warrant application to contain a truthful factual showing of probable cause – "truthful in the sense that the information put forth is 'believed or appropriately accepted by the affiant as true.'" *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting *Franks v. Delaware*, 438 U.S. 154, 165 (1978). To preclude a grant of qualified immunity, a "warrant application [must be] so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *George v. City of St. Louis*, 26 F.3d 55, 57 (8th Cir. 1994) (citing *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986)). For purposes of qualified immunity, "[t]he issue is not whether the affidavit actually establishes probable cause, but rather whether the officer had an objectively reasonable belief that it established probable cause." *Thompson v. Reuting*, 968 F.2d 756, 760 (8th Cir. 1992).

*Id.* at 1003.

Given the uncontroverted material facts of this case—namely that Plaintiff was present in a location forbidden by the Ex Parte order and Plaintiff's refusal to comply with officers' verbal commands—the Court finds that the probable cause statement submitted by Childers was not "so lacking in indicia of probable cause" to give rise to a viable claim.

In conclusion, Deputy Childers is immune from Plaintiff's claims related to the entry search of Plaintiff's residence, Plaintiff's arrest, the taking of Plaintiff's firearm, and the probable cause statement for the arrest warrant pursuant to the doctrine of qualified immunity. Plaintiff has not shown that there was any violation of her constitutional rights.

With respect to Deputy Childers, Plaintiff also complains that her initial bond of $75,000 was excessive. It was later reduced to $5,000. Deputy Childers was responsible for writing down the original bond amount. The long-standing practice allowed by the Newton County Circuit Court was that initial bond amounts for probable cause arrests (as opposed to arrests made per an arrest warrant) was for the law enforcement officers to decide the bond amount. Because this is a judicial function delegated to these officers, judicial immunity shields Childers from liability. *Hamilton v.*

*City of Hayti, Missouri*, 948 F.3d 921, 928 (8th Cir. 2020) (concluding that clerk who exercised authority delegated by Judge was entitled to absolute immunity "because their judgments are functionally comparable to those of judges - that is, because they, too, exercise a discretionary judgment as a part of their function"); *John Chism Bail Bonds, Inc. v. Pennington*, 411 Fed.Appx. 927, 930 (8th Cir. 2011) ("We hold quasi-judicial absolute immunity protects the sheriff and jail administrator in their joint decision to require a sheriff's bond before releasing Williams"). Childers is additionally immune from the excessive bond claim.

### B. Brandy Pooler

Plaintiff's claims against Pooler revolve around her confinement in the Newton County Jail after her arrest. They involve: (1) a strip search prior to being placed in population; (2) the conditions of confinement; and (3) Plaintiff was not released within 24 hours after her warrantless arrest. The Supreme Court has recognized the importance of making sure contraband is not injected into a jail's population. "Correctional officials have a legitimate interest, indeed a responsibility, to ensure that jails are not made less secure by reason of what new detainees may carry in on their bodies." *Florence v. Bd. of Chosen Freeholders of County of Burlington*, 566 U.S. 318, 322 (2012). In that case, the Court noted the Constitution would allow jailers to strip search – without individualized suspicion – all detainees entering the jail. *Id*. at 330 ("The question here is whether undoubted security imperatives involved in jail supervision override the assertion that some detainees must be exempt from the more invasive search procedures at issue absent reasonable suspicion of a concealed weapon or other contraband. The Court has held that deference must be given to the officials in charge of the jail unless there is 'substantial evidence' demonstrating their response to the situation is exaggerated").

10

Case 3:20-cv-05015-MDH   Document 91   Filed 09/07/21   Page 10 of 14

With regard to the conditions of confinement claim, Plaintiff explained in her deposition this claim is based on her contention that she should not have been housed in a cell containing three other people. She described the conditions as "just disgusting and crowded." The conditions alleged clearly to not rise to the level of a constitutional deprivation. "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." *Brown v. Nix*, 33 F.3d 951, 955 (8th Cir. 1994). To establish that a prisoner's conditions of confinement violate the Eighth Amendment, the prisoner must show that (1) the alleged deprivation is, "objectively, sufficiently serious," resulting "in the denial of the minimal civilized measure of life's necessities," and (2) that the prison officials were deliberately indifferent to "an excessive risk to inmate health or safety," meaning that the officials actually knew of and disregarded the risk. *Williams v. Delo*, 49 F.3d 442, 445 (8th Cir. 1995) (citations omitted). Plaintiff's complaints here clearly do not meet this standard and Plaintiff has not shown that there was any violation of her constitutional rights.

Another claims to relief against Pooler is that she did not release Plaintiff from custody within 24 hours after her arrest. "The fourth amendment requires prompt judicial determination of probable cause as a prerequisite to an extended restraint on liberty following an arrest without a warrant." *Wayland v. City of Springdale*, 933 F.2d 668, 670 (8th Cir. 1991). "A defendant may be detained only as long as it takes to process 'the administrative steps incident to arrest.'" *Id*. (quoting *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975). The Supreme Court has held that "judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of Gerstein." *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991). The arrest warrant here was issued on August 5, 2017, at 3:58 p.m., just three minutes after the initial 24 hours of Plaintiff's arrest had passed. A constitutional violation does not exist under these circumstances. Therefore, the Court finds that Plaintiff has not established any constitutional

11

violation stemming from Defendant Pooler's actions and so Defendant Pooler is entitled to qualified immunity.

## C. Chris Jennings

Plaintiff acknowledges Sheriff Jennings was not involved in and not present at her residence when she was arrested on August 4, 2017. In fact, the record establishes he was out of state and did not return until the Sunday following Plaintiff's Friday arrest. She is suing him for "lack of leadership; moral compass in the acceptance and participation in conspired transgressions of [his deputies]; failure to establish policies and procedures, and meaningful supervision to appropriately guide and monitor the actions of Defendants and other law enforcement officers." (Doc.17, ¶ 12).

For a supervisor, such as a sheriff, to be liable for the acts of a subordinate, "something more must be shown than merely the existence of the supervisor-subordinate relationship." *Clay v. Conlee*, 815 F.2d 1164, 1170 (8th Cir. 1987). *See also Ripson v. Alles*, 21 F.3d 805, 809 (8th Cir. 1994) (same). If a supervisor is not directly involved in the constitutional deprivation, supervisory liability for § 1983 claims can be established only with a showing of deliberate indifference. "In section 1983 actions, supervisory liability is limited. A supervisor cannot be held liable for an employee's unconstitutional actions based on a theory of *respondeat superior*. Rather, a supervisor incurs liability for a violation of a federally protected right when the supervisor is personally involved in the violation or when the supervisor's corrective inaction constitutes deliberate indifference toward the violation. The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he or she] might see." *Ottman v. City of Independence*, 341 F.3d 751, 761 (8th Cir. 2003) (internal citations and quotation marks omitted).

The uncontroverted facts of this case demonstrate summary judgment in favor of Jennings is clearly warranted under both prongs of qualified immunity. First, the facts are that Sheriff Jennings never received any prior complaint of similar misconduct against any of the defendants named in this lawsuit. And without prior notice, deliberate indifference does not exist. Further, it was certainly not clearly established law that without prior notice that corrective steps had to be anticipated and taken. Thus, neither prong of qualified immunity has been satisfied and Sheriff Jennings is entitled to summary judgment here.

Plaintiff also asserts there were two instances after August 4, 2017, that Sheriff Jennings failed to provide assistance to Plaintiff. (Doc.17, ¶ 86) (alleging Jennings failed to allow a civil standby for Plaintiff) and ¶ 91 (alleging Jennings did not assist Plaintiff in locating her children during her scheduled visitation period). While the facts are disputed as to whether or not these allegations are even true, in any event there is no constitutional obligation for Jennings to have intervened in this type of a "failure-to-protect" claim. These types of claims are viable in this Circuit in only two situations: (1) where there exists a "special relationship," such as a custodial setting, *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 199-200 (1989), and; (2) where the danger was created by the state actor, the "state-created-danger" situation. *Fields v. Abbott*, 652 F.3d 886, 891 (8th Cir. 2011). Neither of those situations applies to this case. Further, what Plaintiff is essentially claiming is that Jennings should have intervened on her behalf on both of these occasions. However, the Eighth Circuit has previously recognized the duty to intervene is limited to situations involving excessive force. *Hess v. Ables*, 714 F.3d 1048, 1052 (8th Cir. 2013) ("outside of the excessive force context, there is no clearly established law regarding a duty to intervene to prevent constitutional violations"). As a result, this theory fails both prongs of the qualified immunity analysis and summary judgment is appropriate.

## CONCLUSION

For the foregoing reasons, Defendants Jennings', Childers', and Pooler's Motion for Summary Judgment (Doc. 71) is **GRANTED**.

**IT IS SO ORDERED.**

Dated: September 7, 2021                     /s/ Douglas Harpool
                                             **DOUGLAS HARPOOL**
                                             **United States District Judge**

14

Case 3:20-cv-05015-MDH   Document 91   Filed 09/07/21   Page 14 of 14